UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,<br><br>        Reorganized Debtors. | **FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST- EFFECTIVE DATE DEBTORS,<br><br>        Plaintiff,<br><br>        v.<br><br>WALLET OWNER 0X10F546A6F4D20D91E5A8506124384759C9F4BC79, *et al.*,<br><br>        Defendants. | Adv. Pro. No. 24-03994 (MG) |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST- EFFECTIVE DATE DEBTORS,<br><br>        Plaintiff,<br><br>        v.<br><br>WALLET OWNER 0xdbc13e67f678cc00591920cece4dca6322a79ac7, *et al.*,<br><br>        Defendants. | Adv. Pro. No. 24-04005 (MG) |

<table>
<tr><td>

MOHSIN Y. MEGHJI, LITIGATION
ADMINISTRATOR, AS REPRESENTATIVE FOR
THE POST- EFFECTIVE DATE DEBTORS,

               Plaintiff,

        v.

ANTOINE CASTEL, *et al.*,

              Defendants.

</td><td>

Adv. Pro. No. 24-04004 (MG)

</td></tr>
</table>

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR
<u>ALTERNATIVE SERVICE</u>**

*A P P E A R A N C E S:*

AKIN GUMP STRAUSS HAUER & FELD LLP
*Attorneys for Plaintiff*
One Bryant Park
New York, New York 10036
By:    Mitchell P. Hurley, Esq.
          Dean L. Chapman Jr., Esq.

2300 N. Field Street, Suite 1800
Dallas, Texas 75201
By:    Elizabeth D. Scott, Esq.
          Nicholas R. Lombardi, Esq.

**MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE**

      Digital blockchain technology, and the anonymity it helps to maintain, has presented new roadblocks to initiating and prosecuting civil litigation designed to recover millions of dollars in value that the Bankruptcy Code and non-bankruptcy law enable a bankruptcy estate to recover. This Opinion deals with an innovative method for serving a summons and complaint to commence such litigation. The Court here is not required to write on a clean slate. Cases from at least one New York state court and federal courts outside this district have authorized service

2

using "non-fungible tokens" served on "digital wallets" in the manner described below. The Court writes briefly here to authorize the use of this method of service in these cases. Whether the plaintiff can ultimately prevail, and if he does, whether he can collect any judgments ultimately obtained, presents challenges for another day.

On September 24, 2024, Mohsin Y. Meghji (the "Litigation Administrator" or "Plaintiff"), as Litigation Administrator for the post-effective date debtors ("Celsius" or "Debtors"), filed a *Motion for Alternative Service* (the "Motion" or "Mot.," ECF Doc. # 11 in Adv. Pro. Nos. 24-03994, 24-04005; ECF Doc. # 16 in Adv. Pro. No. 24-04004) in connection with the above-captioned adversary proceedings[1] related to the Debtors' bankruptcy cases. The Plaintiff seeks entry of an order authorizing Plaintiff to effect service on the defendants in those adversary proceedings (the "Defendants") via alternative means pursuant to Federal Rules of Civil Procedure 4(e)(1) and 4(f)(3), made applicable to the adversary proceedings pursuant to Rule 7004(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Specifically, Plaintiff seeks to serve the Defendants with copies of Plaintiff's *Notice of Pretrial Conference in an Adversary Proceeding* (ECF Doc. # 5) and the applicable *Adversary Complaint* (ECF Doc. # 1)[2] by airdropping a non-fungible token ("NFT") to their cryptocurrency wallet addresses. In support of the Motion, the Litigation Administrator has filed two declarations (individually, "Trager Decl. 1" and "Trager Decl. 2" and collectively, the "Trager Declarations") by Jason Trager ("Trager"), a Senior Director of the Blockchain and Digital Assets practice at

---

[1] *Mohsin Y. Meghji, Litig. Adm'r, as Representative for the Post-Effective Date Debtors v. Castel*, A.P. No. 24-04004 (Bankr. S.D.N.Y.); *Mohsin Y. Meghji, Litig. Adm'r, as Representative for the Post-Effective Date Debtors v. Wallet Owner 0X10F546A6F4D20D91E5A8506124384759C9F4BC79*, A.P. No. 24-03994 (Bankr. S.D.N.Y.); *Mohsin Y. Meghji, Litig. Adm'r, as Representative for the Post-Effective Date Debtors v. Wallet Owner 0xdbc13e67f678cc00591920cece4dca6322a79ac7*, A.P. No. 24-04005 (Bankr. S.D.N.Y.).

[2] The electronic filing number for the notices and complaints is the same across the above-captioned adversary proceedings. (Mot. at 1 n.1.)

FTI Consulting Technology LLC ("FTI").[3]  (ECF Doc. ## 12, 21 in Adv. Pro. Nos. 24-03994, 24-04005; ECF Doc. ## 17, 32 in Adv. Pro. No. 24-04004.)  The Motion is unopposed.  A hearing on it was held on October 8, 2024.

For the following reasons, the Motion is **GRANTED**.

## I.  BACKGROUND

The Litigation Administrator seeks to avoid fraudulent transfers and recover estate property allegedly misappropriated from Celsius by Jason Stone ("Stone") and KeyFi Inc. ("KeyFi").  (Mot. ¶ 5.)  The Litigation Administrator alleges that Stone and KeyFi wrongfully caused the transfer of Celsius assets to wallets and cryptocurrency exchange accounts owned or controlled by the Defendants and to or for the benefit of Stone and KeyFi.  (*Id.*)  The Plaintiff settled its case against Stone and KeyFi (*id.* ¶ 6); the Defendants in the ongoing adversary proceedings are the initial or subsequent transferees who allegedly received Celsius assets from Stone and KeyFi (*id.* ¶ 5).

The Defendants are the owners of cryptocurrency wallets ("Defendant Wallets") to which FTI traced asset transfers.  (Trager Decl. 1 ¶¶ 21–68).  FTI also found that each of the wallets has been used after those initial challenged transfers.  (Trager Decl. 2 ¶¶ 6–7.)  Trager attests that it is likely that ownership of the Defendant Wallets has remained the same since the alleged fraudulent transfers took place: as he explains in his first Declaration, it is "extremely rare" for the private key associated with a given wallet to change hands.  (Trager Decl. 1 ¶ 10; *see also* Trager Decl. 2 ¶ 5.)  Not much else is known about the owners of the Defendant Wallets—

---

[3]  FTI is a consulting firm that provides "blockchain advisory services, cryptocurrency investigations, digital forensic investigations, data governance, privacy and security services, and electronic discovery services to assist organizations across a variety of industries to better govern, secure, find, and analyze information."  (Trager Decl. 1 at 1.)

4

neither FTI, nor Celsius, nor the Litigation Administrator has been able to identify mailing addresses or any other contact information for them. (Mot. ¶ 8.)

Trager explains that it is possible to interact with the Defendant Wallets through the Ethereum or Bitcoin blockchains by airdropping—*i.e.*, depositing to specific wallet addresses—NFTs. (Trager Decl. 1 ¶¶ 11, 16.) The airdrop process is automatic and does not require the recipient to take action to receive the NFT. (*Id.* ¶ 16.) Each NFT will contain a link to a service website, which FTI will create, containing copies of the complaints and any other necessary legal documents in each adversary proceeding. (Mot. ¶ 8; Trager Decl. 1 ¶ 12.) The website will not appear on search engines because it will include a "noindex directive"; in addition, it will adhere to several cybersecurity standards, and visitors would not be able to amend or delete the site. (Trager Decl. 1 ¶ 12.) FTI will use different techniques to create NFTs depending on the kind of wallet (Ethereum or Bitcoin) they target. (*Id.* ¶¶ 13–14.) Each NFT will have its own metadata that will include a clear hyperlink in the name of the token that, when clicked, will bring the user to the website with the complaints. (*Id.* ¶ 15.) FTI will then airdrop the NFTs to each of the Defendant Wallets; airdropping them will ensure that each NFT is sent directly to a single address. (*Id.* ¶ 16.) FTI plans to monitor the targeted Defendant Wallets to ensure that they receive the NFTs, will log the exact date and time on which the NFTs are clicked, and will observe website traffic to ensure that visitors are not automatic bots designed to click links on the blockchain. (*Id.* ¶¶ 16, 17.)

## II.   LEGAL STANDARD

### A.   Service of Process upon a Defendant Within the United States

Service of a summons and complaint in an adversary proceeding is governed by Bankruptcy Rule 7004(a)(1), which incorporates FED. R. CIV. P. 4.

5

Pursuant to Bankruptcy Rule 7004(d), the summons and complaint may be served anywhere in the United States, usually for the cost of a postage stamp. Rule 7004(b) provides for service within the United States by first class mail, postage prepaid. That method, of course, presupposes that the defendant is "within the United States" and has a mailing address within the United States. With digital wallets, and with the owners of digital wallets, the plaintiff does not know whether the defendant is in the United States, or has a mailing address within the United States, to which the summons and complaint can be mailed. Hence, the need to find an alternative method of service.

FED. R. CIV. P. 4 provides that process may be served upon an individual located in a judicial district of the United States by "following the local state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; delivering a copy of the summons and of the complaint to the individual personally; leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or delivering a copy of each to an agent authorized by appointment or by law to receive service of process." *Dantzig v. Cnty. of Westchester*, No. 19-CV-8811 (NSR), 2021 WL 1030655, at *3 (S.D.N.Y. Mar. 16, 2021).

Since this Court is located in New York, service on defendants located within the United States can be made by any method authorized by New York law. CPLR § 308 provides a number of methods of service, including service "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." CPLR § 308(5). The impracticability standard of section 308(5) does not require a party to show that it has actually attempted to serve a party under every other method provided in section 308. *State St. Bank & Tr. Co. v. Coakley*, 16 A.D.3d 403, 403 (2d Dep't 2005).

6

However, "Section 308(5) [does] require[ ] a showing of impracticability, under the facts and circumstances of the case." *Shamoun v. Mushlin*, No. 12 CIV. 03541 AJN, 2013 WL 91705, at *2 (S.D.N.Y. Jan. 8, 2013).  New York courts regularly find service impracticable where "plaintiff has been unsuccessful in obtaining either a business or home address for defendant, even though she has diligently sought that information." *Baidoo v. Blood-Drazku*, 48 Misc. 3d 309, 312, 5 N.Y.S.3d 709, 713 (Sup. Ct. N.Y. Cnty. 2015); *accord Snyder v. Alternate Energy, Inc.*, 19 Misc. 3d 954, 959, 857 N.Y.S.2d 442, 446–47 (Civ. Ct. N.Y. Cnty. 2008).

"'Once the impracticability standard is satisfied, due process requires that the method of service be reasonably calculated, under all the circumstances, to apprise the defendant of the action.'" *Corson v. Power Moves, Inc.*, No. 19-CV-8847 (VSB), 2020 WL 3318099, at *1 (S.D.N.Y. June 18, 2020) (quoting *Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803 (4th Dep't 2013)).  To satisfy due process, any alternative means of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

    **B.**    **Service of Process upon a Defendant Outside of the United States**

Bankruptcy Rule 7004(a)(1) governs the service of process of a summons and complaint in adversary proceedings, and it incorporates Rules 4(f) and 4(h) of the Federal Rules of Civil Procedure.  Rule 4(f) provides three methods of service on an individual in a foreign country: (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents"; (2) "by a method that is reasonably calculated to give notice," for example, "as prescribed by the foreign country's law" or "as the foreign authority directs in response to a letter

7

rogatory"; or (3) "by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(1)–(3).

Under the third method permitted by Rule 4(f)(3), "a court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Front Row Fund I, L.P. ex rel. ChoiceWORX, Inc. v. Gross*, No. 23-CV-2255 (JHR) (JLC), 2023 WL 4441976, at *1 (S.D.N.Y. July 11, 2023) (citing *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 342 (E.D.N.Y. 2021)); *accord United States v. Mrvic*, 652 F. Supp. 3d 409, 412 (S.D.N.Y. 2023). "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Pinkfong Co., Inc. v. Avensy Store*, No. 1:23-cv-09238 (JLR), 2023 WL 8531602, at *1 (S.D.N.Y. Nov. 30, 2023) (citing *Vega v. Hastens Beds, Inc.*, 342 F.R.D. 61, 64 (S.D.N.Y. 2022)). A court may require the parties to show that they have reasonably attempted to effectuate service on the defendants and that the circumstances are such that the court's intervention is necessary. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010); *accord In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265–66 (S.D.N.Y. 2012) ("[B]efore authorizing service under Rule 4(f)(3), some district courts have required: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." (internal citations and quotation marks omitted)). Imposing such a requirement has been viewed as necessary "in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Ryan v. Brunswick Corp.*, No. 02-CV-0133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002). "But nothing in Rule 4(f) itself or controlling case

8

law suggests that a court must always require a litigant to first exhaust the potential for service . . . before granting an order permitting alternative service under Rule 4(f)(3)." *In GLG Life Tech. Corp. Sec. Litig.*, 287 F.R.D. at 266; *see also* 4B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 3d § 1134, at 333 (2002) ("The only proscription on the district court's discretion is that the method not be prohibited by international agreement.").

### III.   DISCUSSION

The Litigation Administrator has not been able to determine whether the Defendants are within or outside of the United States, but he asserts that their location does not matter—wherever they may be in the world, service via NFT is permissible. The Court agrees. Regardless of the Defendants' geographic location, this Court has authority to permit alternative service. For the reasons discussed below, the Court will authorize service via NFT.

#### A.   Service on Defendants Within the United States

FED. R. CIV. P. 4 sets out permissible methods of service on a defendant within the United States: service must either comply with the law of the state in which the district (or here, bankruptcy) court is located, or must consist of one of the following: (1) serving the defendant personally, (2) leaving a copy of the summons and complaint at the defendant's dwelling with someone of suitable age and discretion who resides there, or (3) delivering copies to an agent authorized by law to receive service of process. The latter three methods, the Litigation Administrator convincingly contends, are inapplicable, as neither he, nor FTI, nor Celsius is able to locate, or even identify, the Defendants. Since this Court is located in New York, Plaintiff appropriately turns to New York law to argue that New York courts permit a broad range of alternative service methods in cases such as this one.

CPLR § 308 governs service of process in New York and allows for service "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section," CPLR § 308(5), *i.e.*, when service by "personal delivery, delivery and mailing, and nailing and mailing" is impracticable. *Doe v. Hyassat*, 337 F.R.D. 12, 15 (S.D.N.Y. 2020) (internal citation omitted). "A particular means of service is not sufficient unless it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. (quoting *Mullane*, 339 U.S. at 314). The question becomes whether service via NFT is "reasonably calculated" to apprise the defendants of the pendency of the actions against them and give them opportunities to present objections.

The Trager Declarations indicate that service via NFT is akin to service via email. Courts have found that service by email satisfies due process when the movant has supplied "some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address." *Kesten v. Broadcast Music, Inc*., 20-cv-8909 (LJL), 2021 WL 1740806, at *2 (S.D.N.Y. Mar. 3, 2021) (internal citation omitted); *see also Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380 (PGG) (OTW), 2019 WL 6498305, at *3 (S.D.N.Y. Dec. 2, 2019) ("Email service has also repeatedly been found by courts to meet the requirements of due process."); *F.T.C. v. Pecon Software*, No. 12 CIV. 7186 PAE, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant.") The rationale behind email service (and other kinds of alternative service) is that such a form of service is reasonably likely to apprise defendants of the pendency of the action against them. *Kesten*, 2021 WL 1740806, at *2 (collecting cases). When email addresses were "used in relation to the scheme by [ ] defendants .

10

. . the [plaintiff] ha[d] demonstrated a high likelihood that defendants would receive service at [those] email addresses." *F.T.C.*, 2013 WL 4016272, at *7. Another relevant, contemporary alternative is service via X (formerly Twitter). Courts, including this one, have found that service via X/Twitter account is "reasonably calculated" to provide timely actual notice when the targets cannot easily be found or reached, and when there were indications that the social media accounts being served were in active use. *See, e.g.*, *In re Three Arrows Cap., Ltd.*, 647 B.R. 440, 454 (Bankr. S.D.N.Y. 2022) (permitting service of subpoena via X when targeted third parties "moved between various countries, concealed their locations, and [did] not appear to be amenable to service via other avenues"); *Hogan Lovells US LLP v. Islamic Republic of Afghanistan et al.*, No. 1:24-cv-05541, slip op. at 1 (S.D.N.Y. Oct. 3, 2024) (granting motion to serve the Taliban via X when, among other factors, delivery via mail to Kabul became impossible).

The Court is satisfied based on the Trager Declarations that the owners of the Defendant Wallets will be apprised of the actions against them if service is made via NFT. As Trager explains, each wallet is a pseudonymous identifier of a single wallet-holder, and only that individual who owns a private key to a given wallet can access the wallet. His uncontested testimony indicates that it is highly unlikely that the wallets have changed hands since the allegedly fraudulent transfers of cryptocurrency into the wallets occurred—*i.e.*, it is unlikely that service made upon the cryptocurrency wallets via NFT, like service via email, will reach individuals *other than* the appropriate defendants who controlled the wallets at the times of those transactions. Moreover, FTI is building a verification method into the NFTs to attempt to ensure that service was made—they plan to monitor the targeted wallets to see, to the extent possible,

11

whether their true holders opened the link to the summons and complaint. Service via NFT therefore seems akin to—if not superior to—service via email.[4]

One New York court has previously approved service via NFT, in *LCX AG v. John Doe Nos. 1-25*, No. 154644/2022 (Sup. Ct. N.Y. Cnty. June 1, 2022). In that case, the defendants were anonymous hackers, the plaintiff could not identify them or their locations, and they could only be reached via NFT. (Memo of Law in Support of Motion for Confirmation of Sufficient Alternative Service, *LCX AG v. John Doe Nos. 1-25*, No. 154644/2022 (Sup. Ct. N.Y. Cnty. June 1, 2022), Dkt. 38.) The *LCX* plaintiff alleged that the defendants regularly used the wallet addresses, suggesting that it was likely that the defendants would return to those addresses and thus receive service. (*Id.* at 11.) As in *LCX*, the owners of the Defendant Wallets are unidentifiable and are in unknown locations, and it seems as though the best way the Litigation Administrator has to reach them is through their crypto wallets. Moreover, those wallets have all been used at least once since the dates of the challenged transfers.

B.     **Service on Defendants Outside of the United States**

The analysis governing alternative service of process on defendants outside the United States is substantively similar to the foregoing analysis under CPLR § 308. Service in a foreign country may be effectuated in one of three ways: (1) "by any internationally agreed means of service that is reasonably calculated to give notice"; (2) by "a method that is reasonably calculated to give notice" in a given foreign country,[5] for example, "as prescribed by the foreign country's law" or "as the foreign authority directs in response to a letter rogatory"; or (3) "by

---

[4] If ownership of the wallets changed after the avoidable transfers into the wallets were made, the transfers may nevertheless be avoidable under section 550 of the Bankruptcy Code.

[5] FED. R. CIV. P. 4(f)(2) does not state that the means must be permitted by a specified foreign country, but the examples provided all require some authorization by a specific foreign regime.

other means not prohibited by international agreement, as the court orders." FED. R. CIV. P.

4(f)(1)–(3). As the whereabouts of the Defendants are unknown, (1) and (2) are inapplicable.[6]

Under Rule 4(f)(3), "a court may fashion means of service on an individual in a foreign country,

so long as the ordered means of service (1) is not prohibited by international agreement; and (2)

comports with constitutional notions of due process." *Front Row Fund I, L.P.*, 2023 WL

4441976, at *1. Courts have discretion whether the method of alternative service should be

permitted. *Pinkfong Co., Inc.*, 2023 WL 8531602, at *1. A court may require the parties to

show that they have reasonably attempted to effectuate service on the defendants, but it does not

have to so require. *See* 4B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 3d §

1134, at 333 (2002) ("The only proscription on the district court's discretion is that the method

not be prohibited by international agreement.").

Courts in this Circuit have approved service by email on unknown defendants whose

whereabouts are unknown but are likely overseas. *Microsoft Corp. v. Does*, No. 12–CV–1335

(SJ) (RLM), 2012 WL 5497946, at *2–3 (E.D.N.Y. Nov. 13, 2012) (collecting cases) (in case

where defendants were "alleged cybercriminals whose personal identities and physical locations

---

[6] Many of the cases Plaintiff cites feature defendants whose approximate whereabouts are known, and therefore assess whether a particular international agreement (usually the Hague Convention) or a particular country's laws prohibit service via NFT. The following opinions, for example, feature defendants who are likely in China, and the analysis in those opinions focuses on whether the Hague Convention bars such service (it does not): *Polansky v. Defendant 1*, No. 23-21852-CIV, 2023 WL 5951838, at *2 (S.D. Fla. Aug. 31, 2023); *Bandyopadhyay v. Defendant 1*, No. 22-CV-22907, 2022 WL 17176849, at *1 (S.D. Fla. Nov. 23, 2022); *Chow v. Defendant 1*, No. 24-CV-480, 2024 WL 3225917, at *1 (E.D. La. Apr. 19, 2024); *Bowen v. Li*, No. 23-CV-20399, 2023 WL 2346292, at *3 (S.D. Fla. Mar. 3, 2023); *Sun v. Defendant 1*, No. 23-CV-21855-RAR, 2023 WL 4532417, at *2 (S.D. Fla. July 13, 2023). The judge in each found that service via NFT on defendants outside the United States was not barred by the Hague Convention and China had not specifically objected to such a method. The Hague Convention is not applicable when the addresses of foreign defendants are unknown. *See Prediction Co. LLC v. Rajgarhia*, No. 09 CIV.7459(SAS), 2010 WL 1050307, at *2 n.10 (S.D.N.Y. Mar. 22, 2010) ("[The Hague Convention] shall not apply where the address of the person to be served with the document is not known.") (internal citation omitted).

However, Rule 4(f)(1) (which the above-cited cases apply) still requires that the means of service chosen complies with due process—i.e., was "reasonably calculated to give notice." The fact that the judges in each of these cases allowed service via NFT necessarily means that they found that such service comported with due process.

[were] unknown," finding that email service was appropriate when certain defendants had responded to plaintiffs' service of process by email, indicating that they were provided with adequate notice); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988 (GBD), 2007 WL 725412, at *2–3 (S.D.N.Y. Mar. 12, 2007) (holding that service by email appropriate where foreign defendants did not disclose their domicile or citizenship to the court, and where plaintiffs demonstrated through their "investigation" that email correspondence was likely to reach defendants). Again, the critical question is whether notice is likely to reach defendants through the chosen alternative method of service. *See Morse v. Levine*, 19-CV-06711 (GHW) (SN), 2019 WL 7494619, at *3–4 (S.D.N.Y. Dec. 19, 2019), *report and recommendation adopted*, No. 1:19-CV-06711-GHW, 2020 WL 85410 (S.D.N.Y. Jan. 3, 2020) ("Service by e-mail is appropriate under Rule 4(f)(3) in some circumstances where the movant has supplied the court with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address. . . . Critical facts in determining whether service by email . . . is appropriate include whether the party to be served maintains the website, monitors the email, or would be likely to receive information transmitted to that address.") (cleaned up). But so long as there is sufficient evidence to suggest that it will, courts have leeway in fashioning methods of service under Rule 4(f). "By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries," and "[f]ederal courts have traditionally incorporated advances in telecommunications technology to methods of notice giving." *Philip Morris*, 2007 WL 725412, at *2 (cleaned up).

The Litigation Administrator cites multiple cases holding that service via NFT comports with due process; this Court has not found any cases holding otherwise. *See, e.g.*, *Polansky*,

14

2023 WL 5951838, at *2 (permitting service via NFT and finding that service via this method is "likely to reach Defendants" and method is not barred by international law or the law of the defendants' country); *Bandyopadhyay*, 2022 WL 17176849, at *2–3 (comparing service via NFT to "e-mail and website posting," permitting it on foreign defendants since not barred by any international agreement); *Bowen*, 2023 WL 2346292, at *1 (same); *Sun*, 2023 WL 4532417, at *2 (same); *Fitzgerald*, 2024 WL 3538245, at *3 (same); *Stil Well v. Defendant "1"*, No. 23-21920-CIV, 2023 WL 5670722, at *2 (S.D. Fla. Sept. 1, 2023) (same); *Chow*, 2024 WL 3225917, at *1 (same; noting that plaintiff's "communication with Defendant occurred exclusively online and that the cryptocurrency scheme was facilitated online using cryptocurrency blockchain technology"); *CipherBlade, LLC v. CipherBlade, LLC*, No. 3:23-CV-00238-JMK, 2024 WL 69164, at *3 (D. Alaska Jan. 5, 2024) (same; noting that "[e]ach wallet address is uniquely identified and linked to an email address and bank account, ensuring that, like an email address, it is specific to a particular user").

For the reasons discussed in Section III.A, *supra*, the Court finds that service via NFT is the best possible way for the Litigation Administrator to provide Defendants with notice. Moreover, neither the Litigation Administrator nor this Court could identify an international law prohibiting service via NFT. Therefore, this Court finds that service via NFT in this case, where no identifying information beyond wallet addresses is known, is permissible even if the Defendants are outside of the United States.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Alternative Service is **GRANTED**.

Dated: October 24, 2024
 New York, NY

 *Martin Glenn*
 MARTIN GLENN
 Chief United States Bankruptcy Judge